IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| TRAVIS NEUPAUER, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | Case No. |
| v. ) | |
| ) | |
| ) | |
| CITY OF GEORGETOWN, ) | |
| ) | |
|     Defendant. ) | |
| ) | |

**PLAINTIFF'S COMPLAINT WITH DEMAND FOR JURY TRIAL**

COMES NOW Plaintiff, TRAVIS NEUPAUER (hereinafter "Plaintiff" or "Neupauer"), and files his Complaint against Defendant, City of Georgetown (hereinafter "Defendant" or "Georgetown"), and in support he states the following:

**NATURE OF THE CLAIMS**

1. This is an action for monetary damages and injunctive relief, pursuant to Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 et seq. (hereinafter the "ADA"), the Family and Medical Leave Act of 1996, 29 U.S.C. §§ 2601 et seq. ("FMLA"), and the South Carolina Human Affairs Law of 1972, SC Code §§ 1-13-10, et seq. ("SCHAL") to redress Defendant's unlawful employment practices against Plaintiff, including discrimination, harassment, retaliation and Defendant's interference with and retaliation against Plaintiff for exercising his rights under the FMLA, leading to Plaintiff's unlawful termination.

1

## JURISDICTION AND VENUE

2. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under the ADA and the FMLA.

3. This Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. §1367(a).

4. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) because a substantial part of the events or omissions giving rise to this action, including Defendant's unlawful employment practices alleged herein occurred in this District.

## PARTIES

5. Plaintiff is a citizen of the United States, and is and was at all times material, a resident of the State of South Carolina.

6. Defendant is a body politic incorporated in the County of Georgetown, State of South Carolina.

7. Defendant is an employer as defined by the laws under which this action is brought and employs the requisite number of employees.

## PROCEDURAL REQUIREMENTS

8. Plaintiff has complied with all statutory prerequisites to filing this action.

9. On June 6, 2024, Plaintiff dual-filed a charge against Defendant with the Equal Employment Opportunity Commission ("EEOC") and the South Carolina Human Affairs Commission ("SCHAC") satisfying the requirements of 42 U.S.C. § 2000e-5(b) and (e).

10. Plaintiff's EEOC charge was timely as it was filed within one hundred eighty days after the alleged unlawful employment practices occurred.

11. On September 23, 2024, the EEOC issued Plaintiff a Notice of Right to Sue.

12. This complaint was filed within ninety days following Plaintiff's receipt of the Notice of Right to Sue.

13. This complaint was filed within two years of the date of the claims made pursuant to the FMLA.

## FACUTAL ALLEGATIONS

14. Plaintiff began his employment with Defendant in 2017, when he was hired as a Fire Fighter/EMT.

15. On or about November 23, 2020, Plaintiff was promoted to the Position of Fire Lieutenant.

16. As a Fire Lieutenant, Plaintiff's essential job functions included providing leadership to firefighting crews at all incidents, supervising subordinate fire service personnel on assigned shifts in the absence of the Battalion Chief, providing fire suppression support and medical intervention as necessary in response to emergencies and incidents, and performing related administrative, supervisory, and technical work as required. During his tenure as Fire Lieutenant, Plaintiff was able to perform the essential functions of his position with or without reasonable accommodation.

17. Plaintiff suffered a workplace injury in 2021, when he fractured his left fibula falling down a fire pole.

18. While Plaintiff's fracture healed, in the years following his injury he was diagnosed with post-traumatic arthritis as a result of the 2021 fracture.

19. On August 9, 2023, Plaintiff informed Defendant that he was suffering from post-traumatic stress disorder, and he utilized FMLA leave from August 9th through August 23, 2023, when he was cleared to return to work without restrictions or accommodations.

20. On November 30, 2023, Plaintiff was scheduled to complete an annual medical physical to maintain his employment with Defendant.

21. When Plaintiff arrived for his physical on November 30th, he submitted a doctor's note to the provider requesting reasonable accommodation relating to the portion of the physical examination which required employees to run on a treadmill. Plaintiff's physician requested that he be permitted to use an exercise bike instead of the treadmill as an accommodation due to his post-traumatic arthritis and the stress running on a treadmill would cause to his ankle.

22. Plaintiff's request for accommodation was reasonable as Defendant's Standard Operating Procedure ("SOP") for annual medical physicals states that for the aerobic capacity evaluation, "…if the employee received written notice from his/her physician excusing them from utilizing a treadmill, the employee shall use a bicycle for testing."

23. Despite Defendant's SOP confirming Plaintiff's requested accommodation was appropriate and reasonable, Defendant denied Plaintiff's accommodation request and informed him he would not be permitted to return to work until he was able to complete the physical examination without the need for any accommodation.

24. Following Defendant's denial of his request for accommodation, Plaintiff schedule another appointment with his treating physician and on December 14, 2023, his doctor provided him with a note saying he was cleared to complete the aerobic capacity examination on a treadmill. Plaintiff emailed a copy of the doctor's note to the Human Resources Manager, Kara Hamilton ("Hamilton"), on the same date he received it.

25.     Despite receiving the doctor's note clearing Plaintiff to complete the annual physical examination without any restrictions, Defendant refused to allow Plaintiff to undergo the examination. Instead, Hamilton informed Plaintiff that the doctor's note was insufficient, and that Plaintiff would need to submit FMLA paperwork completed by his physician for Defendant to reevaluate and/or consider permitting Plaintiff to return to work.

26.     While the FMLA paperwork was entirely irrelevant to Plaintiff's prior request to use an exercise bike as an accommodation for the aerobic capacity portion of the annual medical exam, Plaintiff followed Defendant's directive and submitted the FMLA paperwork completed by his physician on January 3, 2024.

27.     In the FMLA paperwork, Plaintiff's doctor confirmed that he suffers from depression, anxiety, and post-traumatic arthritis in his left ankle and that his conditions are chronic and permanent. Plaintiff's physician also outlined that over a six-month period, episodes of incapacity were estimated to occur one to two times per month and each episode was likely to last up to two days.

28.     Plaintiff's doctor did not state Plaintiff would be incapacitated and unable to work one to two days each month, but that he might experience episodes of incapacity on one to two days per month. Any of the referenced periods of incapacity could occur on Plaintiff's off days when he would not require any additional time off. As Plaintiff worked a 24/48 schedule (24 hours on shift, followed by 48 hours off), of he experienced a flare up at work on a Monday, he would potentially be incapacitated on the following Tuesday and Wednesday, and perfectly capable of reporting to work for his next scheduled shift on Thursday thereby having no impact on Defendant's scheduling needs.

29. On January 4, 2024, following receipt of Plaintiff's completed FMLA documentation, Hamilton emailed Plaintiff's doctor on January 4, 2024, and accused his practice of dishonesty and of providing inconsistent and false information. Plaintiff's physician replied to Hamilton's email confirming that there were no inconsistencies, Plaintiff was seen by the doctor, and no request for medical leave was being made.

30. On January 12, 2024, Hamilton requested Plaintiff's attendance for a meeting in her office. When Plaintiff arrived, he was called into a meeting with Hamilton, Fire Chief Charlie Cribb, and a City Administrator and informed that Defendant was terminating his employment.

### **COUNT I: Disability Discrimination in Violation of the ADA**

31. Plaintiff re-alleges and adopts, as it fully sets forth herein, the allegations stated in Paragraphs 1-30 above.

32. At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of the ADA.

33. Plaintiff has an actual disability, has a record of being disabled, and/or was perceived as being disabled by Defendant.

34. Plaintiff was able to perform the essential functions of his job with or without reasonable accommodations.

35. Defendant is prohibited under the ADA from discriminating against Plaintiff because of Plaintiff's medical condition regarding discharge, employee compensation, and other terms, conditions, and privileges of employment.

36. Defendant violated the ADA by unlawfully terminating and discriminating against Plaintiff based on his medical condition.

37. Defendant intentionally discriminated against Plaintiff based on his medical condition.

38. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer, lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

### COUNT II: Failure to Accommodate in Violation of the ADA

39. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-30 above.

40. Plaintiff is a disabled person as defined by the ADA in that he has an actual disability, has a record of being disabled, and/or was perceived as being disabled by Defendant.

41. Defendant failed to engage in the interactive process and failed to accommodate Plaintiff as required by the ADA.

42. As a result of the foregoing, Plaintiff was caused to be injured and damaged, to have his career significantly and adversely impacted, to forgo compensation and benefits, and to endure embarrassment, mental anguish and emotional distress.

### COUNT III: Retaliation in Violation of the ADA

43. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-30 above.

44. Plaintiff engaged in protected activity under the ADA while employed by Defendant.

45. Defendant intentionally retaliated against Plaintiff for engaging in protected activity under the ADA by terminating Plaintiff's employment.

46. Defendant's conduct violated the ADA.

47. Defendant's discriminatory conduct in violation of the ADA has caused Plaintiff to suffer a loss of pay, benefits, and prestige for which he is entitled to damages.

48. Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling him to compensatory damages.

### COUNT IV: Interference in Violation of the FMLA

49. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-30 above.

50. Plaintiff was an employee eligible for protected leave under the FMLA.

51. Defendant is and was an employer as defined by the FMLA.

52. Plaintiff exercised or attempted to exercise his rights under the FMLA.

53. Defendant interfered with Plaintiff's lawful exercise of his FMLA rights.

54. Defendant's actions were willful, knowing and voluntary, and otherwise done with malice and/or reckless indifference for Plaintiff's rights.

55. Plaintiff was injured due to Defendant's willful violations of the FMLA, for which he is entitled to legal relief.

### COUNT V: Retaliation in Violation of the FMLA

56. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-30 above.

57. Plaintiff was an employee eligible for protected leave under the FMLA.

58. Defendant is and was an employer as defined by the FMLA.

59. Plaintiff exercised or attempted to exercise his rights under the FMLA.

60. Defendant retaliated against Plaintiff for exercising or attempting to exercise his FMLA rights.

61. Defendant's actions were willful, knowing and voluntary, and otherwise done with malice and/or reckless indifference for Plaintiff's rights.

62. Plaintiff was injured due to Defendant's willful violations of the FMLA, for which he is entitled to legal relief.

### COUNT VI: Disability Discrimination in violation of the SCHAL

63. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-30 above.

64. At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of the SCHAL.

65. Plaintiff has an actual disability, has a record of being disabled, and/or was perceived as being disabled by Defendant.

66. Defendant is prohibited under the SCHAL from discriminating against Plaintiff because of Plaintiff's disability with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

67. Defendant violated the SCHAL by unlawfully terminating and discriminating against Plaintiff based on his disability.

68. Defendant intentionally discriminated against Plaintiff based on Plaintiff's disability.

69. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the SCHAL, Plaintiff has suffered and continues to suffer, lost wages, lost

benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

### COUNT VII: Retaliation in Violation of the SCHAL

70. Plaintiff re-alleges and adopts, as it fully sets forth herein, the allegations stated in Paragraphs 1-30 above.

71. Plaintiff engaged in protected activity under the SCHAL while employed by Defendant.

72. Defendant engaged in intentional retaliation against Plaintiff for his participation in protected activity.

73. Defendant's conduct violates the SCHAL.

74. Defendant's discriminatory conduct, in violation of the SCHAL, has caused Plaintiff to suffer a loss of pay, benefits, and prestige for which he is entitled to damages.

75. Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling him to compensatory damages.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, requests this Honorable Court:

a) Enter judgment requiring Defendant to pay back wages and back benefits found to be due and owing at the time of trial, front-pay, compensatory damages, including emotional distress damages, in an amount to be proved at trial, liquidated damages, and prejudgment interest thereon;

      b)     Grant Plaintiff costs and an award of reasonable attorneys' fees (including expert fees); and

      c)     Award any other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all triable issues herein.

December 23, 2024  
Columbia, South Carolina

Respectfully Submitted:  
/s/ William Nettles  
William N. Nettles  
Federal Bar No. 6586  
Law Office of Bill Nettles  
2008 Lincoln St.  
Columbia, SC 29201  
T: (803) 814-2826  
bill@billnettleslaw.com

/s/ Lisa Scheibly  
Lisa Scheibly  
*Application for Pro Hac Vice Pending*  
Florida Bar No. 1010110  
Spielberger Law Group  
4890 W. Kennedy Blvd., Suite 950  
Tampa, FL 33609  
T: (800) 965-1570 Ext. 157  
lisa.scheibly@spielbergerlawgroup.com

*Counsel for Plaintiff*